IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALFREDO CHICA-IGLESIA, | : | |
|     Petitioner | : | |
| | : | No. 1:18-cv-0035 |
| v. | : | |
| | : | (Judge Rambo) |
| WARDEN CRAIG LOWE, | : | |
|     Respondent | : | |

## MEMORANDUM

Before the Court is Petitioner Alfredo Chica-Iglesia's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the constitutionality of his detention by the United States Department of Homeland Security, Immigration, and Customs Enforcement ("ICE") at the Pike County Correctional Facility, Pennsylvania since May 22, 2017. (Doc. No. 1.) Following an Order to show cause (Doc. No. 5), Respondent filed a response, contending that Petitioner is an "arriving alien" who is lawfully detained under 8 U.S.C. § 1225(b) and is not entitled to release or a bond hearing. (Doc. No. 7.) For the reasons set forth below, the Court will dismiss Petitioner's writ of habeas corpus.

## I.    BACKGROUND

Petitioner is a citizen and national of El Salvador. (Doc. 7-1, Ex. 1, Record of Deportable/Inadmissible Alien.) On August 31, 2016, Petitioner was encountered via the PARS terminal at ICE/ERO Philadelphia, Pennsylvania Field Office. (Id. at 3.) While Petitioner claimed to have entered the United States in

1

1992 on a Visa, ICE indices showed no record of legal entry into the United States at any time.  (Id.)

On February 2, 2017, Petitioner was convicted of violating 18 Pa. C.S.A. § 2706(A1), terroristic threats, and sentenced to two years of probation.  (Id., Ex. 1 at 4-5; Ex. 2 at 3.)  He was also convicted of violating 18 Pa. C.S.A. § 6106(A1), firearms not to be carried without a license, on the same day, and was sentenced to 9-23 months of incarceration and 3 years of probation.  (Id., Ex. 1 at 4-5.)  On April 19, 2017, ICE/ERO requested to interview Petitioner at the Curran-FromHold Correctional Facility in Philadelphia, Pennsylvania, but was denied by the facility.  (Id. at 3.)  Petitioner was subsequently released from the Curran-Fromhold facility on April 27, 2017.  (Id.)

On May 22, 2017, Petitioner was charged with being removable for the following reasons: (1) he is an alien present in the United States without being admitted or paroled; and (2) his conviction of a crime involving moral turpitude. (Id.)  On the same day, he was served with a warrant for arrest and notice to appear, and taken into ICE custody.  (Id., Ex. 1 at 2; Ex. 2 at 3; Ex. 3; Ex. 4.)  On June 6, 2017, an immigration judge denied Petitioner's request for a change in custody status and ordered him removed from the United States to El Salvador. (Id., Ex. 5.; Ex. 6.)  On June 23, 2017, Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA").  (Id., Ex. 7.)  Subsequently,

on February 2, 2018, the BIA denied Petitioner's appeal. (Id., Ex. 11.) On February 12, 2018, the United States Court of Appeals for the Third Circuit granted Petitioner a temporary stay of removal until his motion for a stay of removal is considered. (Id., Ex. 12.) Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on January 5, 2018. (Doc. No. 1.)

**II.   DISCUSSION**

The Third Circuit has granted Petitioner a temporary stay of removal, hence, the order of removal has not become administratively final, and Petitioner is still considered to be in pre-removal immigration detention. See 8 U.S.C. § 1231(a)(1)(B)(i) (providing removal period begins on the "date the order of removal becomes administratively final"). 8 U.S.C. § 1225(b) governs the detention of "aliens arriving in the United States," and mandates the detention of "arriving aliens" who do not possess valid entry or travel documents when they arrive. See Ahmed v. Lowe, Civ. No. 3:16-CV-2082, 2017 WL 2374078 (M.D. Pa. May 31, 2017) (finding that because petitioner was classified as an "arriving alien," his detention is controlled by § 1225(b)). Section 1225(b) provides that arriving aliens are inspected immediately upon arrival in the United States by an officer of the United States Customs and Boarder Control. If the immigration officer determines that the alien is inadmissible because the alien cannot produce valid entry documents, see 8 U.S.C. § 1182(a)(7), "the officer shall order the alien

3

removed from the United States without further hearing or review." 8 C.F.R. § 1235.3(b)(1)(I), (b)(2)(ii) (providing that arriving aliens subject to expedited removal are not entitled to a hearing or appeal of this decision).

If, however, the alien "indicates an intention to apply for asylum . . . or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(ii); see 8 C.F.R. § 235.3(b)(4) ("If an alien subject to the expedited removal provisions indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer.").

Should the asylum officer determine that the alien has a credible fear of persecution, the alien "shall be detained for further consideration of the application for asylum." 8 U.S.C. §1225(b)(1)(B)(ii). If the alien receives a positive credible fear determination, the alien will be placed in removal proceedings. 8 C.F.R. § 235.6(a)(1)(ii). The alien, however, remains detained pursuant to 8 U.S.C. § 1225(b) during the pendency of these proceedings. The only statute which permits an alien's release from § 1225(b) custody is 8 U.S.C. § 1182(d)(5)(A), pursuant to which an alien may be paroled into the United States if the Attorney General determines "on a case-by-case basis" that "urgent humanitarian reasons or significant public benefit" warrant the alien's release. 8 U.S.C. § 1182(d)(5)(A).

4

Decisions under § 1182 are purely discretionary and the regulations prevent an immigration judge from "redetermin[ing] conditions of custody" with respect to certain classes of aliens, including "[a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act." 8 C.F.R. § 1003.19(h)(2)(i)(B).

As provided for above, Petitioner is subject to removal pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), as an alien present in the United States without being admitted or paroled and § 212(a)(2)(A)(i)(I) of the INA, as an alien convicted of committing acts which constitute the essential elements of a crime involving moral turpitude. (Doc. No. 7-1 at 10.) Respondent contends that because Petitioner was never admitted into the United States, he is an inadmissible arriving alien and his detention is controlled by 8 U.S.C. § 1225(b), rather than § 1226(c). (Doc. No. 7.) In his petition, Petitioner originally claimed that his detention was controlled by § 1226(c) (Doc. No. 1), but now, through the filing of his traverse, appears to agree with Respondent that his detention is controlled by § 1225(b) (Doc. No. 8). As will be discussed below, whether Petitioner is detained pursuant to § 1225(b) or § 1226(c) does not alter the outcome of his case.

The United States Supreme Court issued a recent opinion that controls this Court's analysis of the instant matter. In Jennings v. Rodriguez, — U.S. —, 138 S.

Ct. 830 (Feb. 27, 2018), the Supreme Court reversed the Ninth Circuit's holding that non-citizens detained under §§ 1225(b)(1), (b)(2), and 1226(c) are entitled to bond hearings every six months. Jennings, 138 S. Ct. at 842. The Court provided:

> § 1225(b) applies primarily to aliens seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b) divides these applicants into two categories. First, certain aliens claiming a credible fear of persecution under § 1225(b)(1) "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Second, aliens falling within the scope of § 1225(b)(2) "shall be detained for a [removal] proceeding." § 1225(b)(2)(A).
>
> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

Id. at 842.

Based upon the Supreme Court's holding in Jennings, this Court must conclude that Petitioner's detention under 8 U.S.C. § 1225(b) does not entitle him to a bond hearing pending his removal proceedings. See id. at 842. Similarly, even if this Court construed Petitioner's detention as controlled by § 1226(c), the result is no different. With regard to § 1226(c), the Supreme Court stated:

§ 1226 applies to aliens already present in the United States. . . . Section 1226(c) in turns states that the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c) then goes on to specify that the Attorney General "may release" one of those aliens "*only if* the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk. § 1226(c)(2) (emphasis added)

Like § 1225(b), § 1226(c) does not on its face limit the length of the detention it authorizes. In fact, by allowing aliens to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue "pending a decision on whether the alien is to be removed from the United States." § 1226(a).

\*\*\*

§ 1226(c) is *not* "silent" as to the length of detention. It mandates detention "pending a decision on whether the alien is to be removed from the United States" . . . and it expressly prohibits release from that detention except for narrow, witness-protection purposes. . . . Indeed, we have held as much in connection with § 1226(c) . . . [i]n <u>Demore v. Kim</u>, 538 U.S., at 529, we distinguished § 1226(c) from the statutory provision in <u>Zadvydas</u> by pointing out that detention under § 1226(c) has "a definite termination point": the conclusion of removal proceedings. As we made clear there, that "definite termination point" – and not some arbitrary time limit

7

devised by courts – marks the end of the Government's detention authority under § 1226(c).

Jennings v. Rodriguez, 138 S. Ct. 830, 846, 200 L. Ed. 2d 122 (2018).

Consequently, in accordance with Jennings, Petitioner's petition will be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Court will dismiss Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

      s/Sylvia H. Rambo
      SYLVIA H. RAMBO
      United States District Judge

Dated: April 25, 2018